HERBERT G. FAIRFIELD *vs.* EDWARD F. LOWRY & another.

Suffolk.   November 29, 1910. — January 4, 1911.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Sale*, Of business.  *Good Will.*  *Contract*, Construction, In writing, Consideration. *Name.*  *Evidence*, Admitted without objection, Extrinsic affecting writings. *Equity Pleading and Practice*, Decree.

A woman, named Marion Smith Lowry, whose father was named Henry A. Smith and who had the right to carry on an insurance business under the names Henry A. Smith and Henry A. Smith & Co. as well as under her own name, signed an instrument in writing, which also was signed by a man doing business under the name of H. G. Fairfield & Co., as follows : " In consideration of $1,000 cash, (the receipt whereof is hereby acknowledged) and the agreement to pay the sum of $800 additional on December 1st next, we hereby agree to sell and deliver on October 1st next, all our right, title and interest in the insurance business of the late Henry A. Smith, Henry A. Smith & Co. and Marion Smith Lowry, to H. G. Fairfield & Co.  Mrs. Lowry to continue in interest until October 1st, and the remaining 10% to be paid within 2 years from date." *Held*, that the language of this instrument was not doubtful, that it did not purport to give to the purchaser of the business the right to use the name of the seller or either of the other names which she had the right to use, and that under the provisions of R. L. c. 72, § 5, the purchaser of the business had no right to use in that business any of those names without the consent in writing of the seller or of the personal representatives of Henry A. Smith.

If, in a suit in equity to enforce the alleged provisions of an agreement in writing, of which the language is not doubtful, evidence is admitted without objection of preliminary negotiations of the parties which afterwards were merged in the agreement in writing, the fact that such evidence was admitted without objection gives it no probative effect and it has none.

If a person, who has been carrying on the insurance business in his own name and in the name of his father which he had the right to use, sells the business without agreeing not to engage in the same business again and without selling the use of his name or consenting in writing to the use of the name of his father, although he cannot derogate from the effect of the sale by attempting to deprive

the purchaser of any part of the business which he has sold to him, he still can engage in the same business himself, using his own name or that of his father, if he does not solicit business from former customers of himself or of his father.

If a person sells an insurance business for $1,800, of which $1,000 is paid in cash, and the remaining $800 is to be paid on a day named, but makes no agreement not to engage in the insurance business, and, when the second payment is made, signs a receipt in writing, by which "in consideration of" such final payment he "agrees not to engage in the insurance business for a period of five years without the consent of the purchaser," this promise is not binding for lack of a consideration, unless there is a consideration because the further agreement was made by the seller in order to obtain immediately the $800 due to him instead of being obliged to sue for it, which here was not considered.

A final decree in a suit in equity, which makes certain declarations in regard to the rights of the parties and concludes with an order that the bill be dismissed, cannot be complained of by the plaintiff on account of such declarations if he put in issue the matters upon which the declarations as to the rights of the parties are made.

BILL IN EQUITY, filed in the Superior Court on November 12, 1909, and amended on November 22, 1909, seeking to restrain the defendant Marion Smith Lowry from conducting the insurance business until August 12, 1912, from imparting information about or otherwise hindering the plaintiff in obtaining such a business sold by her to him, and from in any way interfering with the conduct of such business by the plaintiff, also seeking to restrain the defendant Edward F. Lowry from in any way interfering with the business of insurance purchased by the plaintiff from Marion Smith Lowry and from attempting to procure such business for himself or any other person.

In the Superior Court the case was heard by *Fessenden*, J., who made the following findings of material facts:

On August 5, 1907, the plaintiff was engaged in the business of fire and casualty insurance in Boston under the name of H. G. Fairfield and Company, and the defendant Marion Smith Lowry was engaged in a similar business in Boston in which she owned and used the names of Henry A. Smith, Henry A. Smith and Company, and Marion Smith Lowry.

The plaintiff and the defendant Marion Smith Lowry had been in negotiation for the sale of the latter's business to the former; and that defendant had stated to the plaintiff that she would not sell to him the names "Henry A. Smith," "Henry A. Smith and Company," and "Marion Smith Lowry." On the same August 5, 1907, after these preliminary negotiations an agree-

ment was dictated by the plaintiff and was drawn up and signed by the defendant Marion Smith Lowry, as follows:

"Boston, Mass. August 5, 1907.

"In consideration of One Thousand Dollars ($1000) cash, (the receipt whereof is hereby acknowledged) and the agreement to pay the sum of Eight Hundred Dollars ($800) additional on December 1st next, we hereby agree to sell and deliver on October 1st next, all our right, title and interest in the Insurance business of the late Henry A. Smith, Henry A. Smith & Co. and Marion Smith Lowry, to H. G. Fairfield & Co.

"Mrs. Lowry to continue in interest until October 1st, and remaining 10% to be paid within 2 years from date.

"Marion Smith Lowry
for Henry A. Smith & Co.
H. G. Fairfield & Co."

The plaintiff paid to the defendant Marion Smith Lowry $1,000 on August 5, 1907, and it was agreed that she should manage the business until he returned from a trip abroad or until October 1, 1907. On or about October 1, 1907, the business was removed to the office of the plaintiff, including the transfer of all ledgers, policy registers, expiration cards, customers' cards and all other data and memoranda relating to the business; and the defendant Marion Smith Lowry was placed upon the plaintiff's pay-roll from about January 1, 1908, having received $50 in full to that time for services. On December 1, 1907, the second payment of $800 became due and payable under the agreement, but the plaintiff delayed payment until January 21, 1908, when he told the defendant Marion Smith Lowry that he would not make the payment unless she would sign a new agreement which he had prepared and which provided that she would not engage in the insurance business for the term of five years from August 5, 1907, without the written consent of the plaintiff.

The instrument proposed as this second agreement was as follows:

"Boston, Mass. Jan. 21, 1908.

"Received of H. G. Fairfield & Co. Eight Hundred Dollars, the same being the second payment (or a total of Eighteen Hundred Dollars) on the purchase of the Henry A. Smith and Marion

Smith Lowry Insurance business, in consideration of which the undersigned agrees not to engage in the insurance business for a period of five years without the consent of the purchaser.

" Estate Henry A. Smith.
Marion Smith Lowry."

The defendant Marion Smith Lowry signed this instrument and received from the plaintiff the sum of $800, which was the second payment provided for under the original agreement.

The third and final payment of $200 provided for in the original agreement became due and payable on August 5, 1909; but was not paid on that day. The plaintiff refused to make this payment, and told this defendant that he would only pay her $175 because he wished her to retain an interest in the business as he might want to use the name " Henry A. Smith."

The defendant Marion Smith Lowry left the employment of the plaintiff on August 14, 1909. During the period of her employment that defendant had assisted the plaintiff in securing and carrying on the business sold by her to him and he used the names of " Henry A. Smith " and " Henry A. Smith and Company " in connection with the business without objection on her part; but she never had given to him any written consent to the use of such names or any of them, unless the contract of August 5, 1907, contained such consent. When she left the employment of the plaintiff she did not take away any property of any kind belonging to the business sold by her to him, and she did not at any time during her employment by the plaintiff or since leaving his employ directly or indirectly act in inducing any of her former customers to take away their business from the plaintiff or to give their business to any other person. The judge found that the plaintiff made an average monthly net profit of $200 from his commissions on the business sold to him. In addition to these amounts he received contingent commissions to the amount of at least $200, and retained all the registers, ledgers, cards and other data and memoranda relating to the business.

After the defendant Marion Smith Lowry left the employ of the plaintiff she notified him to discontinue the use of the names " Henry A. Smith," " Henry A. Smith and Company " and " Marion Smith Lowry " and informed him that the use of

such names by the plaintiff "will seriously interfere with my business," and she also notified various insurance companies for which the complainant then was acting as agent under the aforesaid names or some of them that she had severed her connection with the plaintiff and retained the right to the use of such names in the insurance business as formerly and that the plaintiff had absolutely no right to the use of such names.

The defendant Edward F. Lowry took out a license as an insurance broker in this Commonwealth on August 17, 1909. He entered the insurance business against the express wishes of his wife, the defendant Marion Smith Lowry, and was not aided directly or indirectly by her in securing any insurance business.

He knew of the agreements signed by her at the time he entered the insurance business and was acquainted with some of the persons who were her customers when she sold her business to the plaintiff. He received business from some of these former customers of his wife.

The judge found that in the negotiations conducted between the parties for the purchase and sale of the business of the defendant Marion Smith Lowry, she stated to the plaintiff that she was about to retire from the insurance business. He found that the principal value in the business sold by the defendant Marion Smith Lowry to the plaintiff consisted in the exclusive information which was contained in the books, papers, cards and other memoranda delivered by her to the plaintiff as to the names of the customers, and the details of the insurance policies held by those customers, particularly the dates of expiration of such policies. He found that the policies had been written to run for terms of one, three and five years and that the terms of about one half of the policies had not yet expired. He found that the value of the information imparted by the defendant Marion Smith Lowry to the plaintiff would be impaired if it was imparted to other persons engaged in the insurance business to a degree depending largely upon the amount of information so imparted and the number of insurance men to whom it might be so imparted. He found that the value of the business would be greatly impaired if that defendant should solicit or accept business from her former customers.

If material, he found that such policies as had been written

by the plaintiff in renewal of those issued by the defendant Marion Smith Lowry had been written by him under the name Henry A. Smith & Co. and that the plaintiff had used that name in sending out expiration notices and requests for renewals. If material, he found that the use of the name Henry A. Smith & Co. would be valuable to the plaintiff in procuring renewals of policies.

The judge further found that at the trial of the case the plaintiff's counsel stated that the plaintiff made no contention that either of the defendants had made use of the names " Henry A. Smith," " Henry A. Smith & Co.," or " Marion Smith Lowry " in the conduct of insurance business since August 14, 1909, and also found that the plaintiff introduced no evidence bearing on the question whether or not the right to use those names passed to the plaintiff by the contract of August 5, 1907, or otherwise; but that the matter was gone into on cross-examination of the plaintiff and also in the evidence introduced by the defendants; and that the plaintiff's counsel stated that he did not consider it necessary to argue that question because the plaintiff's contention was merely that the defendants were wrongfully soliciting insurance from old customers of the defendant Marion Smith Lowry, and that as bearing on the latter question the former question was immaterial.

The judge made a final decree, declaring that the defendant Marion Smith Lowry did not convey to the plaintiff the right to the use of the names " Henry A. Smith," " Henry A. Smith and Company " and " Marion Smith Lowry " or any of those names, and did not give the plaintiff any written consent to the use by him of any or all of those names; that the plaintiff had no legal right to the use of any or all of those names; that the defendant Marion Smith Lowry was not bound to refrain from the use of any or all of those names, nor was either defendant bound to refrain from competition with the plaintiff in the insurance business; and ordering that the plaintiff's bill be dismissed.

The plaintiff appealed.

*W. L. Came*, for the plaintiff.

*F. M. Forbush*, for the defendants.

SHELDON, J. The plaintiff does not deny that upon the findings made at the hearing his bill was rightly dismissed. His

contention is that the right to use the names "Henry A. Smith," "Henry A. Smith & Co." and "Marion Smith Lowry" in carrying on the insurance business, did pass to him by the agreement between himself and Mrs. Lowry, and that the defendants have no right to use those names in such business; and also that Mrs. Lowry is bound not to compete with him in that business, and not to solicit for herself or any other person the patronage of her former customers or of the former customers of Smith or Smith and Company, and not to interfere in any way with the plaintiff's peaceful enjoyment of the business which he purchased from her.

The written agreement of August 5, 1907, between the plaintiff and Mrs. Lowry did not purport to give to him the right to use the names in question. The effect of this material circumstance is in no wise weakened by the fact that the language of this agreement was chosen by the plaintiff himself. The fact that she allowed him to use those names for a time is sufficiently accounted for by the friendly relations that existed between the parties while she was in his employ, and does not necessarily show an understanding on her part that he had acquired the right to use them. Nor is the language of the instrument doubtful. Such cases as *Winchester* v. *Glazier*, 152 Mass. 316, 323, and *Insurance Co.* v. *Dutcher*, 95 U. S. 269, 273, have no application here. Under the provisions of R. L. c. 72, § 5, the plaintiff has no right to use in his business either of these names without the written consent respectively of Mrs. Lowry or of Smith's personal representative.

We have not considered the finding that before the execution of the written agreement Mrs. Lowry had told the plaintiff that she would not sell to him the names in question; for it may well be doubted whether it was open to the defendants to prove this fact, as the preliminary negotiations were merged in the written agreement. If so, the fact that the evidence was received without objection would not give to it any probative effect. *Butterick Publishing Co.* v. *Fisher*, 203 Mass. 122, 132, 133, and cases cited.

After the sale by Mrs. Lowry to the plaintiff of her interest in the insurance business, she had not the right to derogate from the effect of what she had done by attempting to deprive the plaintiff of any part of the business which she had sold to him.

But this did not prevent her from engaging in the same business herself, or from using her own name or that of her father in carrying on such business, although she would not be allowed to solicit business from the former customers of herself and her father. She could not so conduct her own new business as to injure the business which she had sold to the plaintiff. *Old Corner Book Store* v. *Upham*, 194 Mass. 101. *Foss* v. *Roby*, 195 Mass. 292. *Hoxie* v. *Chaney*, 143 Mass. 592.

The plaintiff does not rely upon Mrs. Lowry's promise made in January, 1908, not to engage in the insurance business for five years. He concedes the correctness of her contention that this promise was invalid for lack of consideration. So we need not consider whether under our decisions the obtaining of the actual money due to her instead of being put to suit to enforce her rights would not have been an adequate consideration for a new promise by her. *Hastings* v. *Lovejoy*, 140 Mass. 261, 265. *Abbott* v. *Doane*, 163 Mass. 433. *Parrot* v. *Mexican Central Railway*, ante, 184. *Tobin* v. *Kells*, ante, 304.

The recitals of the decree were properly made. *Braman* v. *Foss*, 204 Mass. 404, 410. Certainly the plaintiff, having put those matters in issue, cannot complain of the court's passing upon them.

*Decree affirmed.*